PEOPLE *ex rel.* WESTERVELT *et al. v.* MEYER, Comptroller.

(*Supreme Court, Special Term, New York County.* January 19, 1889.)

MUNICIPAL CORPORATIONS—MARKETS—PERMITS.

Although Laws N. Y. 1884, c. 102, provides that permits to occupy stalls in the West Washington market, in the city of New York, shall not be revocable by the comptroller, except for good and sufficient cause, such permits do not confer upon the holders any right, upon the abolition of that market by the legislature, and the erection of another of the same name in a different part of the city, to occupy similar stalls in the new market in preference to other applicants.

At chambers. Application by Daniel P. Westervelt and others for *mandamus* and injunction.

*Delancy Nicoll,* for relators. *H. R. Beekman,* Corp. Counsel, for respondent.

PATTERSON, J. The plaintiffs in this action and the relators in the special proceedings are the occupants of certain stalls in West Washington Market, in the city of New York. They are the holders of permits issued by the proper authority, and those permits authorized them to carry on their business at certain specified and numbered stalls in that market-house. It appears in the papers before me that the present structure, called the "West Washington Market," is to be discontinued as a market-house or place for holding a market; the land having been taken by the authority of the legislature of the state, by the dock department of the city of New York, to be appropriated to other uses than that of a market. It also appears that, under authority of the legislature of the state, a new place has been selected, upon which another market-house is erected, which is to be called the "West Washington Market," and the plaintiffs and the relators claim that they are entitled to permits from the comptroller, to allow them to occupy spaces in the new market-house, and they seek by *mandamus* to compel the defendant to allot to them such spaces; and they also sue to enjoin him from proceeding to rent stalls in the new market-house until provision is made for them respectively therein. I have very carefully considered all the papers submitted on the two motions, and the very able and interesting argument of the counsel for the relators and plaintiffs, but I fail to find any reason to justify the interposition of the court to grant either of the applications. The essential question in each motion is the same, namely: Had these plaintiffs and relators a clear le-

gal right to demand of the comptroller that upon the discontinuance of the use of the old market-house they shall be permitted, in preference to all other applicants, to occupy spaces in a new building situated on other property of the city, and constructed and appropriated to market purposes by the authority or requirement of the legislature? Whatever may be the proper discrimination between the right to sell in a market and the occupation of a particular place in the market-house at which to sell it is very clear that since the ordinance of 1823 the right to sell in the public markets of the city of New York, so far as these relators are concerned, is inseparably connected with the particular places in the market appropriated to them by the permits issued to them. It cannot be controverted that, prior to the passage of the statute, (chapter 102, Laws 1884,) all such permits were revocable at the will of the comptroller. By that act it was provided that such permits should be revocable by the comptroller for good and sufficient cause only, and not otherwise.

It is argued in this case that these permits, being in force, are not revocable by the comptroller; that they still stand as continuing authority to the plaintiffs and relators to carry on their business in the market; and that they are entitled to move with the market to the new structure, and the failure or refusal of the comptroller to assign them places in the new market is a virtual revocation of the permits; but I cannot so construe the permits themselves, or the refusal of the comptroller to comply with the demands of these plaintiffs. There is no revocation of these permits by the comptroller, nor is there anything in the permits themselves, nor in the facts presented by the papers, which requires that the comptroller, upon the cessation of the use of this particular market-house, should grant to these applicants a permission to move with the market. He has done nothing which revokes their licenses or permits. What has been done has been done under the authority of the legislature of the state of New York, in the exercise of its unquestioned power to appropriate the old market-place to another use. The new market-house is built under the authority of the legislature, and the duty of renting stalls in it is incumbent upon the comptroller in looking after the best interests of the city, and in renting its property. The licenses to the present applicants, if they are revoked at all, are revoked by the legislature, and by the municipal authorities, irrespective of any act or of any volition of the comptroller, and I cannot construe chapter 102 of the Laws of 1884 as furnishing any authority for the claim on the part of the applicants that, under the changed circumstances, they have either a preference or a clear legal right to be selected by the comptroller, as those persons who shall occupy places in the new structure. It seems to me that the provision of that act referred to relates altogether to the revocation by the comptroller of such permits, and was intended to furnish a security to the holder of such permits against merely capricious and arbitrary acts of that officer, depriving them of the licenses, so that they might appeal to the courts in proper proceedings, if it were unjustly sought to deprive them of their licenses. The mere fact that the new market-house is to take the place of the old one, and is called by the same name, cannot impose of itself a duty upon the comptroller with reference to the occupants of the structure which is to be vacated. All the conditions are entirely different, and if the plaintiffs are injured by the destruction of their rights in the old market-house they have remedies which may be enforced in another way. The motion to continue the temporary injunction must be denied, and the motion for a *mandamus* must also be denied, with costs.